# 23-684

**23-748(xap)**

# United States Court of Appeals for the Second Circuit

WINDWARD BORA LLC,

*Plaintiff-Appellant-Cross-Appellee,*

v.

CONSTANCE R. BROWNE and ROYSTON D. BROWNE,

*Defendants-Appellees-Cross-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK

**BRIEF AND SPECIAL APPENDIX FOR PLAINTIFF-APPELLANT-CROSS-RESPONDENT**

MARGOLIN, WEINREB & NIERER, LLP
*Attorneys for Plaintiff-Appellant-Cross-Appellee*
165 Eileen Way, Suite 101
Syosset, New York 11791
(516) 921-3838
seth@nyfclaw.com

## TABLE OF CONTENTS

Table of Authorities………..………………………………………………… ii

Statement of Issues........................................................................................1

Statement of The Case ...................................................................................1

Statement of Facts..........................................................................................3

I. The Loans Executed By The Appellees and Secured By The Property.............3

II. The Actions Concerning The Loans ..............................................................4

Summary of Appelant's Argument.....................................................................6

Standard of Review..........................................................................................7

Argument.........................................................................................................7

I. Standards of Law .............................................................................................7

II. The Requirements of RPAPL § 1301(3) ..........................................................9

III. Windward Bora Was Not Required To Comply With RPAPL § 1301(3)........10

IV. Appellee's Endured No Prejudice From Windward's Commencement of The Underlying Action ...........................................................................................15

V. Appellee's Motion For Summary Judgment Should Have Been Denied .........17

Conclusion .......................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*21st Mortg. Corp. v. Ahmed,*
173 A.D.3d 951 (2d Dept. 2019) .......... 15

*Anderson v. Libelty Lobby, Inc.,* 477 U.S. 242 (1986) .......... 8, 17

*Batavia Townhouses, Ltd. v. Council of Churches Hous. Dev. Fund Co., Inc.,*
38 N.Y.3d 467 (2022) .......... 13, 14, 15

*Brown v. Eli Lilly & Co.,*
654 F.3d 347 (2d Cir. 2011) .......... 8

*Buckley v. Deloitte & Touche USA, LLP,*
888 F. Supp. 2d 404, 415 (S.D.N.Y. 2012)
*affd*, 541 F. Appx 62 (2d Cir. 2013) .......... 8, 17, 18

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .......... 7

*Central Trust Co. v. Dann,*
85 N.Y.2d 767 (1995) .......... 10, 13, 15

*D'Amico v. City of New York,*
132 F.3d 145 (2d Cir. 1998) .......... 8

*Dollar Dry Dock Bank v. Piping Rock Bldrs.,*
181 A.D.2d 709 (2d Dept. 1992) .......... 9

*Donnel1y v. Greenburgh Cent. Sch. Dist. No. 7,*
691 F.3d 134 (2d Cir. 2012) .......... 8, 17

*Dyck-O'Neal, Inc. v. Thomson,*
56 A.D.3d 1262 (4th Dept. 2008) .......... 18

*In re Brooklyn Navy Yard Asbestos Litig. (Joint E. & S. Dist. Asbestos Litig.),*
971 F.2d 831 (2d Cir.1992) .......... 12

*Lehman v. Roseanne Invs. Corp.*,
106 A.D.2d 617 (2d Dept. 1984) .......... 12, 15, 18

*Leon's Bakery, Inc. v. Grinnell Corp.*,
990 F.2d 44 (2d Cir.1993) .......... 12

*Michalski v. Home Depot, Inc.*,
225 F.3d 113 (2d Cir. 2000) .......... 12

*Old Republic Nat. Title Ins. Co. v. Conlin*,
129 A.D.3d 804 (2d Dept. 2015) .......... 10, 11

*Reichert v. Stilwell*, 172 N.Y. 83 (1902) .......... 13

*Sautter v. Frick*,
229 A.D. 345, 242 N.Y.S. 369 (App. Div. 1930)
*aff'd* 256 N.Y. 535, 177 N.E. 129 (1931) .......... 11, 14, 16

*Tiffany & Co. v. Costco Wholesale Corp.*,
971 F.3d 74 (2d Cir. 2020 .......... 7

*U.S. Bank v. Stern*,
189 A.D.3d 1313 (2d Dept. 2020) .......... 15

*U.S. West Financial Services, Inc. v. Marine Midland Realty Credit Corp.*,
810 F.Supp. 1393 (S.D.N.Y.1993) .......... 10

*United States v. Paugh*,
332 F. Supp. 2d 679 (S.D.N.Y. 2004) .......... 9

*United States v. Whitney*,
602 F.Supp. 722 (W.D.N.Y.1985) .......... 10

*Valley Sav. Bank v. Rose*,
228 A.D.2d 666 (2d Dept. 1996) .......... 9, 11

*Wells Fargo Bank, N.A. v. Irizarry*,
142 A.D.3d 610 (2d Dept. 2016) .......... 15

*West v. AT&T*,
311 U.S. 223 (1940) .....12

*West-Fair Elec. Contractors v. Aetna Cas. & Surety Co.*,
78 F.3d 61 (2d Cir. 1996) ..... 8, 17

**Statutes**

N.Y.R.P.A.P.L. ("RPAPL") § 1301(3) ..... *passim*

**Rules**

Fed. R. Civ. P. 56(a) .....7

## STATEMENT OF ISSUES

1. Did the District Court incorrectly deny Plaintiff-Appellant's motion for summary judgment?

2. Did the District Court incorrectly determine that Plaintiff-Appellant's underlying action should be dismissed?

3. Did the District Court incorrectly determine that the underlying action was barred by New York's election of remedies doctrine, specifically N.Y.R.P.A.P.L. ("RPAPL") § 1301(3)?

4. Did the District Court incorrectly determine that Plaintiff-Appellant failed to establish "special circumstances" for leave to be granted *nunc pro tunc?*

## STATEMENT OF THE CASE

This appeal concerns an action commenced by Windward Bora, LLC ("Plaintiff-Appellant" or "Appellant" or "Windward") that sought a monetary judgment against Royston D. Browne and Constance R. Browne (collectively "Defendants-Appellees" or "Appellees" or the "Brownes" ) based upon their default under the terms of the promissory note ("Windward's Note" or the "Note") that they admitted originally occurred more than fifteen (15) years ago in 2008. In response to the Complaint, Appellees filed an Answer consisting of a defense, fourteen (14) affirmative defenses and two (2) counterclaims. Windward filed its Motion for Summary Judgment, Appellees opposed and Windward interposed a reply.

Appellee's also filed a Motion for Summary Judgment, Windward opposed, and Appellees filed a reply in further support.

By the Opinion and Order dated March 31, 2023, the Hon. Barbara Moses, United States Magistrate Judge For The Southern District of New York, denied Windward's Motion for Summary Judgment, granted Appellees' Motion for Summary Judgment, and dismissed Plaintiff's complaint. Despite finding that Plaintiff established its *prima facie* case for relief, that the District Court possessed subject matter jurisdiction, that the action was *not* barred by the statute of limitations, and that the action was *not* barred by *res judicata* or Rooker-Feldman, the District Court incorrectly dismissed this matter because it determined that this underlying action was barred by RPAPL § 1301(3). Specifically, the District Court determined that leave of court was required prior to the filing of the underlying action and that no "special circumstances" were present to grant such leave to commence a new action *nunc pro tunc*.

The District Court erred because Windward was not barred from seeking a monetary judgment against Defendants pursuant to RPAPL § 1301(3). Specifically, the Judgment of Foreclosure and Sale in the original 2009 Action by the prior mortgagee and the subsequent sale of the Property at auction by the prior mortgagee rendered Windward's Judgment of Foreclosure and Sale in the 2016 Action void. As a result, RPAPL § 1301 was not applicable because there was no possibility of

duplicative litigation because Windward's sole remedy concerning Appellees' default under Windward's Loan was now a suit for breach of the terms of Windward's Note

Accordingly, the District Court erred in denying Windward's Motion for Summary Judgment, in granting Appellee's Motion for Summary Judgment, and in dismissing the underlying action for failure to comply with RPAPL § 1301.

## STATEMENT OF FACTS

### I. The Loans Executed By The Appellees and Secured By The Property

On July 21, 2005, Appellees obtained a loan in the amount of $536,000.00 (the "Senior Loan") from First Estate Funding Corp ("First Estate"). On July 21, 2005, Appellees executed a note in the amount of $536,000.00 to memorialize the obligation in favor of First Estate (the "Senior Note"). To secure this indebtedness, the Appellees executed a mortgage (the "Senior Mortgage") bearing the same date in favor of First Estate Funding Corp and recorded in The Office of The City Register of the City of New York, Bronx County as CRFN 2005000518913. (JA[1]: 333 – 348). Said lien encumbered the Property known as 1723 Taylor Avenue, Bronx, New York 10460 (the "Property") as a Senior Lien. *See id.*

---

[1] "JA: __" refers to the documents in the "Joint Appendix."

Also on July 21, 2005, Appellees obtained a second loan in the amount of $105,000.00 from First Estate ("Windward's Loan"). On July 21, 2005, Appellees executed a note in the amount of $105,000.00 to memorialize the obligation in favor of First Estate (the "Plaintiff's Note" or the "Note"). (JA: 24 - 25). To secure this indebtedness, the Appellees executed a mortgage (the "Windward's Mortgage") bearing the same date in favor of First Estate Funding Corp and recorded in The Office of The City Register of the City of New York, Bronx County as 2005000518913. (JA: 33 - 43). Said lien encumbered the Property as a Lien subordinate to the Senior Lien. *See id.*

## II. The Actions Concerning The Loans

On June 5, 2009, Aurora Loan Services, LLC, ("Aurora") as owner of Senior Mortgage commenced an action to foreclose its first lien in New York State Supreme Court, Bronx County entitled *Aurora Loan Services, LLC v. Browne, et. al.,* Bronx County Index No.: 381143/2009 (the "2009 Action"). Aurora named the record assignee of the Mortgage in the 2009 Action.

The named assignee of record of Windward's Mortgage failed to answer in the 2009 Action and a default judgment was entered. In October of 2016, Gustavia Home LLC ("Gustavia") filed a motion seeking to intervene in the 2009 Action. This motion was denied by the Hon. Howard H. Sherman on the basis that it was not timely filed. (JA: 349 - 384).

On December 2, 2016, Gustavia commenced its own action seeking to foreclose Plaintiff's second position Mortgage in the United States District Court For The Southern District of New York entitled *Gustavia Home, LLC v. Browne, et al*, Case No.: 16-cv-9318 (the "2016 Action"). On May 2, 2017, Aurora, now the holder of the first position mortgage, obtained a Judgment of Foreclosure and Sale in the 2009 Action. (JA: 385 - 402). On July 17, 2018, Gustavia Home LLC obtained its own Judgment of Foreclosure and Sale in the 2016 Action. (JA: 403 - 410). Ultimately, on January 14, 2019, the Property was sold at public auction by a Court Appointed Referee pursuant to the Judgment of Foreclosure and Sale in the 2009 Action by the holder of the first position mortgage. (JA: 411 - 419).

With its second position mortgage now foreclosed out, on June 19, 2020, Windward filed the instant action seeking a monetary judgment pursuant to Appellees' breach under the terms of Windward's Note. (JA: 19 - 25). Appellees breached their obligations under the Windward's Note by failing to pay the regular monthly payment which came due on July 1, 2014 (the "Event of Default" or the "Default") and all subsequent payments. *See id.*; (JA: 201). Appellee also admitted to being in default under the terms of the Loan in their Answer and in their sworn deposition testimony. (JA: 68, 135 - 136).

Following the completion of discovery, both parties filed simultaneous motions for summary judgment on May 24, 2022. Appellee's motion for summary

judgment sought dismissal of Windward's complaint and a judgment for legal fees.. Windward opposed and Appellee's interposed reply. Windward's Motion for Summary Judgment sought a monetary judgment as a result of Appellee's admitted default under the terms of the Windward Note. Appellees opposed and Windward interposed a reply. (R. 91).

Ultimately, the District Court issued its Opinion and Order dated March 31, 2023 which denied Windward's Motion For Summary Judgment, granted Appellees' Motion For Summary Judgment and dismissed the underlying complaint. (JA: 513 - 541). The District Court entered a Judgment of dismissal. (JA: 542). Windward filed its Notice of Appeal. (JA: 553)

## SUMMARY OF APPELANT'S ARGUMENT

The District Court erred in denying Windward's Motion for Summary Judgment, granting Appellee's Motion for Summary Judgment, and dismissing the underlying compliant. The District Court erred because Windward was not required to obtain leave of court to commence the underlying action. Equitable concerns militate against the mechanical application of RPAPL § 1301 in this case. Specifically, the Judgment of Foreclosure and Sale in the 2009 Action and the subsequent sale of the Property at Auction rendered the Judgment of Foreclosure and Sale in the 2016 Action void. As a result, RPAPL § 1301 was not applicable because there was no possibility of duplicative litigation because Windward's sole

remedy concerning Appellees' default under Windward's Loan was a suit for breach of the terms of Windward's Note.

## STANDARD OF REVIEW

The United States Court of Appeals should review the District Court's decision denying Windward's Motion for Summary Judgment and granting Appellee's Motion for Summary Judgment *de novo*. *See Tiffany & Co. v. Costco Wholesale Corp.,* 971 F.3d 74, 83 (2d Cir. 2020). All ambiguities and permissible inferences should be resolved in favor of the non-moving party. *See Jones v. County of Suffolk*, 936 F.3d 108, 114 (2d Cir. 2019)

## ARGUMENT

### I. Standards of Law

Fed. R. Civ. P. 56 provides that a court may grant summary judgment when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers or interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (internal quotation marks omitted). If the movant meets his burden of

proof, then the burden shifts, requiring the opposing party to "offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998).

To defeat a motion for summary judgment, the non-movant must come forward with specific evidence showing that a genuine issue of material fact exists. *See West-Fair Elec. Contractors v. Aetna Cas. & Surety Co.,* 78 F.3d 61, 63 (2d Cir. 1996). A genuine issue of material fact exists only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Libelty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *see also Donnelly v. Greenburgh Cent. Sch. Dist. No. 7,* 691 F.3d 134, 141 (2d Cir. 2012).

In determining if a genuine dispute of material fact exists, "the court must resolve all ambiguities and draw all factual interferences in favor of the party against whom summary judgment is sought." *Buckley v. Deloitte & Touche USA, LLP,* 888 F. Supp. 2d 404, 415 (S.D.N.Y. 2012) *affd*, 541 F. Appx 62 (2d Cir. 2013) (citation omitted). Moreover, mere conclusory allegations, speculation, or conjecture will not avail a party opposing summary judgment. *See D'Amico,* 132 F.3d at 149. As a result, "[w]here no rational finder of fact court finds in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir.

2011). Courts have explicitly recognized that "[s]ummary judgment is often appropriate in mortgage foreclosure actions." *United States v. Paugh,* 332 F. Supp. 2d 679, 680 (S.D.N.Y. 2004).

## II. The Requirements of RPAPL § 1301(3)

RPAPL § 1301(1) provides that when "final judgment for the plaintiff has been rendered in an action to recover *any part of the mortgage debt,* an action shall not be commenced or maintained to foreclose the mortgage, unless an execution against the property of the defendant has been issued upon the judgment to the sheriff and has been returned wholly or partly unsatisfied". *See Valley Sav. Bank v. Rose,* 228 A.D.2d 666, 646 N.Y.S.2d 349 (2d Dept. 1996). RPAPL § 1301(3) further provides that "[w]hile [a foreclosure] action is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover *any part of the mortgage debt,* without leave of the court in which the former action was brought" (*emphasis adde*d). *See id.*

The purpose of RPAPL § 1301 "is to avoid multiple suits to recover the same mortgage debt and confine the proceedings to collect the mortgage debt to one court and one action." *Dollar Dry Dock Bank v. Piping Rock Bldrs.,* 181 A.D.2d 709, 710, 581 N.Y.S.2d 361 (2d Dept. 1992). Specifically, RPAPL § 1301 prevents a mortgagee of real property from seeking to enforce its rights upon default by pursuing a legal remedy and an equitable remedy at the same time. *See U.S. West*

*Financial Services, Inc. v. Marine Midland Realty Credit Corp.,* 810 F.Supp. 1393, 1402 (S.D.N.Y.1993); see also *United States v. Whitney,* 602 F.Supp. 722, 730 (W.D.N.Y.1985).

"The purpose of this statute is to protect the mortgagor 'from the expense and annoyance' of simultaneously defending against two independent actions to recover the *same* mortgage debt." (*emphasis added*). *Old Republic Nat. Title Ins. Co. v. Conlin,* 129 A.D.3d 804, 805, 13 N.Y.S.3d 99 (2d Dept. 2015) *quoting Central Trust Co. v. Dann*, 85 N.Y.2d 767, 772, 651 N.E.2d 1278 (1995).

## III. Windward Bora Was Not Required To Comply With RPAPL § 1301(3)

The District Court erred in dismissing the underlying complaint for purported non-compliance with RPAPL § 1301(3) by not seeking leave of court prior to commencing this instant action. (JA: 513 - 541). This Court should overturn the District Court's Decision, vacate the dismissal, deny Appellee's Motion for Summary Judgment, and grant Windward Bora's Motion for Summary Judgment because equitable concerns militate against the mechanical application of RPAPL § 1301 in this case. Specifically, the Judgment of Foreclosure and Sale in the 2009 Action and the subsequent sale of the Property at auction by the first position mortgage holder rendered Plaintiff's applicable Judgment of Foreclosure and Sale in the 2016 Action void. As a result, RPAPL § 1301 is not applicable because there is no possibility of duplicative litigation because Plaintiff's sole remedy concerning

Defendants' default under the Plaintiff's Loan is now a suit for breach of the terms of Plaintiff's Note.

Generally, courts have determined that RPAPL § 1301 should be strictly construed since it is in derogation of a plaintiff's common-law right to pursue the alternate remedies of foreclosure and recovery of the mortgage debt at the same time. *See id.* However, courts have determined that "equitable concerns militate against a mechanical application" of RPAPL § 1301. *See Valley Sav. Bank, supra* 228 A.D.2d 666, 667, 646 N.Y.S.2d 349, 351 (holding that where, as here, a judgment from a prior action to collect on a mortgage becomes void there is no possibility of duplicative litigation based on the same mortgage debt and a subsequent foreclosure action should not be subject to RPAPL § 1301). A defendant is not entitled to dismissal pursuant to RPAPL § 1301(3) of a junior mortgagee's subsequent action seeking a monetary judgment on a note when the previously commenced foreclosure action is abandoned because the junior mortgagee's "status as a junior mortgagee made it improbable that foreclosure would satisfy the underlying debt." *Old Republic Nat. Title Ins. Co. v. Conlin,* 129 A.D.3d 804, 805, 13 N.Y.S.3d 99 (2d Dept. 2015). A junior mortgagee whose lien and right of redemption are legally cut off by a foreclosure judgment and sale under a senior mortgage cannot maintain a foreclosure action against the foreclosure purchaser and, whatever lien interest that they possessed has been transferred to the surplus moneys, if any, arising upon the

sale (in this case there was no surplus). *See Sautter v. Frick,* 229 A.D. 345, 242 N.Y.S. 369 (App. Div. 1930) *aff'd* 256 N.Y. 535, 177 N.E. 129 (1931). Thus, where a lienholder's *in rem* interest is destroyed by reason of a foreclosure sale, its only remedy is to commence an action on the note. *See Lehman v. Roseanne Invs. Corp.,* 106 A.D.2d 617, 483 N.Y.S.2d 106 (2d Dept. 1984). As a result, any commenced foreclosure action becomes moot, there is no possibility of a double recovery, and there is no reason to require plaintiff to seek permission to institute a suit on the note pursuant to RPAPL § 1301(3). *Lehman, supra*.

Determinations from the New York Court of Appeals are binding on federal courts sitting in diversity concerning ambiguities of New York law. *See Michalski v. Home Depot, Inc.,* 225 F.3d 113, 116 (2d Cir. 2000). Where determinations from the New York Court of Appeals have not been rendered, the decisions of New York Appellate Division are helpful indicators. *See In re Brooklyn Navy Yard Asbestos Litig. (Joint E. & S. Dist. Asbestos Litig.),* 971 F.2d 831, 850 (2d Cir.1992). Specifically, the holding of "an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. AT&T,* 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940). Other data include relevant case law from other jurisdictions on the same or analogous issues, scholarly writings in the field, and any other resources available

to the state's highest court. *See Leon's Bakery, Inc. v. Grinnell Corp.,* 990 F.2d 44, 48 (2d Cir.1993).

In *Batavia Townhouses, Ltd. v. Council of Churches Hous. Dev. Fund Co., Inc.,* the New York Court of Appeals discussed RPAPL § 13013(3). *See* 38 N.Y.3d 467, 486, 195 N.E.3d 503, 515 (2022). The Court reiterated that "once a foreclosure action has been filed, a plaintiff may not simultaneously sue on the note without leave of the court in which the foreclosure proceeding is pending," but explained the underlying purposed of the statute in detail. *See id.*

The Court first cited to its prior decision in *Reichert v. Stilwell* where the predecessor statute to RPAPL § 1301(3) was analyzed. *See* 172 N.Y. 83, 85, 64 N.E. 790 (1902). In *Reichert,* the foreclosing plaintiff obtained a judgment of foreclosure and sale. *See id.* Then while the judgment of foreclosure and sale remained valid and collectible, the foreclosing plaintiff, without leave of court, sought a personal judgment concerning the same debt. *See id.* Recognizing that the judgment of foreclosure and sale remained valid and collectible, the Court determined that it was not equitable to seek or ultimately obtain simultaneous multiple judgments concerning the same debt because they would merge. *See id.* The New York Court of Appeals then cited *Central Trust Co. v. Dann,* 85 N.Y.2d 767 (1995). In *Central Trust Co.* the New York Court of Appeals applied the logic from an 1883 decision entitled *Wyckoff v. Devlin,* 12 Daly 144, to hold that RPAPL § 1301(3) was not

applicable when the lienholder that commenced the subsequent suit on note was unable to seek a deficiency *and* be made whole as a result of a judgment from a prior action. *See id.*

The Court in *Batavia Townhouses, Ltd.* then reiterated that "[t]he purpose of the statutory rule [RPAPL § 1301(3)] " 'is to shield the mortgagor from the expense and annoyance of two independent actions at the *same time with reference to the same debt.*"' 38 N.Y.3d 467, 486, 195 N.E.3d 503 (2022)

Here, on June 5, 2009, Aurora as owner of Senior Mortgage commenced the 2009 Action to foreclose the Senior Mortgage. Aurora named the record assignee of Windward's Mortgage in the 2009 Action. On December 2, 2016, Gustavia Home commenced its own 2016 Action to foreclose Plaintiff's Mortgage. On May 2, 2017, Aurora obtained a Judgment of Foreclosure and Sale in the 2009 Action. (JA: 385 - 402). On July 17, 2018, Gustavia obtained a Judgment of Foreclosure and Sale in the 2016 Action. (JA: 403 - 410). Ultimately, on January 14, 2019 the Property was sold at public auction by a Court Appointed Referee pursuant to the Judgment of Foreclosure and Sale in the 2009 Action. (JA: 411 - 419). Accordingly, the Windward's Mortgage lien and its right of redemption were cut off by the sale pursuant to the Judgment of Foreclosure and Sale in the Senior Mortgage 2009. *See Sautter, supra.*

On June 19, 2020, Plaintiff filed the instant action seeking a monetary judgment pursuant to Appellees' breach under the terms of Windward's Note. (JA: 19 - 25). As a result of the foreclosure sale pursuant to the 2009 Action, the 2016 Action and the Judgment issued became moot, there was no possibility of a double recovery for Plaintiff under both Plaintiff's Note and Plaintiff's Mortgage, and there was no reason to require Plaintiff to seek permission to institute the instant suit on the note pursuant to RPAPL § 1301(3). *See Lehman, supra; see also Central Trust Co., supra; Batavia, supra.*

## IV. Appellee's Endured No Prejudice From Windward's Commencement of The Underlying Action

Even assuming arguendo that Windward was required to obtain leave of court pursuant to RPAPL § 1301(3), which it was not, *see supra* Argument § III, Windward Bora's commencement of the underlying action without seeking leave should have been excused by the District Court. As such, the District Court's Decision and Order should be overturned, and the dismissal should be vacated.

New York courts have repeatedly held that any alleged "failure to comply with RPAPL § 1301(3) should ... [be] disregarded as a mere irregularity" where a defendant cannot establish prejudice as a result of the purported lack of compliance. *Wells Fargo Bank, N.A. v. Irizarry*, 142 A.D.3d 610, 611, 36 N.Y.S.3d 689 (2d Dept. 2016); *see U.S. Bank v. Stern*, 189 A.D.3d 1313, 134 N.Y.S.3d 272 (2d Dept. 2020)

*citing Central Trust, supra*; *21st Mortg. Corp. v. Ahmed,* 173 A.D.3d 951, 952, 105 N.Y.S.3d 467, 469 (2d Dept. 2019).

Here, on July 17, 2018, Gustavia obtained a Judgment of Foreclosure and Sale in the 2016 Action concerning the Windward Loan. (JA: 403 - 410). On May 2, 2017, Aurora obtained Judgment of Foreclosure and Sale in the 2009 Action. (JA: 385 - 402). On January 14, 2019 the Property was sold at public auction by a Court Appointed Referee pursuant to the Judgment of Foreclosure and Sale in the 2009 Action. (JA: 411 - 419). Accordingly, the Windward's Mortgage lien and its right of redemption were cut off by the sale pursuant to the Judgment of Foreclosure and Sale in the Senior Mortgage 2009. *See Sautter, supra.*

Accordingly, the Appellees were clearly aware of Windward's, previously Gustavia's, efforts to obtain relief as a result of Appellee's default. Additionally, the Appellees were also aware that Windward's *in rem* interest in the Property was terminated by the sale of the Property pursuant to the Judgment of Foreclosure and Sale in the 2009 Action. Finally, as Windward's Judgment of Foreclosure and Sale was rendered void by the termination of its *in rem* interest in the Property as a result of the sale of the Property pursuant to the Judgment of Foreclosure and Sale in the 2009 Action, Appellees were no longer at risk of being forced to simultaneously litigate concerning Windward's Note and its Mortgage in concurrent law suits. This is exactly what RPAPL § 1301(3) seeks

to prohibit. As this was now an impossibility, it is clear that Windward was not in violation of the statute and any perceived failure to comply by seeking leave of court to commence a new action should have been disregarded by the District Court.

## V. Appellee's Motion For Summary Judgment Should Have Been Denied

The District Court should not have granted Appellee's Motion for Summary Judgment because it identified a pivotal issue of fact concerning if Windward's judgment of foreclosure and sale was in fact "void." As a result the dismissal should be vacated because Appellee did not meet its burden for grant of summary judgment.

In her Opinion and Order, the Hon. U.S. Magistrate Judge Barbara Moses stated as follows:

> It may well be, as plaintiff argues, that "where a lienholder's *in rem* interest is destroyed by reason of a foreclosure sale, its only remedy is to commence an action on the note," which would weigh in favor of granting leave, *nunc pro tunc*, to proceed with that action. PI. Opp. Mem. at 11 (*citing Lehman v. Roseanne Invs. Corp.,* 106 A.D.2d 617, 618, 483 N.Y.S.2d 106, 107 (2d Dept. 1984)). However, in the absence of any evidence concerning the terms of the Nationstar settlement or the results of the auction, the Court cannot simply accept, on faith, that the Federal Foreclosure Judgment is now "void," PI. Opp. Mem. at 9, or and that there is "no possibility of a double recovery," *Lehman*, 106 A.D.2d at 618, 483 N.Y.S.2d at 108, if this action at law proceeds to a judgment. *See Dyck-O'Neal,* 56 A.D.3d at 1264, 868 N.Y.S.2d at 840 (trial court properly dismissed action at law, under § 1301(3), where the plaintiff "failed to establish the circumstances" of the prior sale of the subject property).

(JA: 539).

Accordingly, Windward Bora came forward and provided the District Court with admissible copies of its Judgment of Foreclosure and Sale in the 2016 Action concerning the Windward Loan (JA: 403 - 410), the Aurora Judgment of Foreclosure and Sale in the 2009 Action (JA: 385 - 402), and proof of the sale that terminated Windward's *in rem* interest in the Property. (JA: 411 - 419).

As such, the District Court identified the issue of if potential surplus funds, or settlement funds existed to allow Windward some means of collection as an alternative to commencing the underlying subsequent action. (JA: 539). This is an ambiguity that the District Court should have drawn in favor of Windward Bora and denied Appellee's Motion For Summary Judgment on the basis that there was a triable issue of fact. *See Buckley v. Deloitte & Touche USA, LLP,* 888 F. Supp. 2d 404, 415 (S.D.N.Y. 2012) *affd*, 541 F. Appx 62 (2d Cir. 2013).

Accordingly, as a result of the clear presence of a triable issue of fact, the District Court should have denied Appellee's Motion for Summary Judgment. As such, the dismissal of the underlying action should be vacated, and this action should be remanded back to the District Court for further proceedings.

## CONCLUSION

WHEREFORE, it is respectfully submitted that this Court overturn the District Court's grant of Appellee's Motion for Summary Judgment.

Dated: Syosset, New York
August 21, 2023

**MARGOLIN, WEINREB & NIERER, LLP**

*/s/ Seth D. Weinberg*
Seth D. Weinberg, Esq.
165 Eileen Way, Suite 101
Syosset, New York 11791
T: 516-921-3838
E: seth@nyfclaw.com
*Counsel for Appellee, Gustavia Home, LLC*

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit, Typeface Requirements and Type-Style Requirements.

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 4,318 words.

2. This document complies with the typeface requirements of Fed. S. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word (2019/Office) in 14-point font, Times New Roman.

Dated: August 21, 2023

**MARGOLIN, WEINREB & NIERER, LLP**
*/s/ Seth D. Weinberg*
Seth D. Weinberg, Esq.
165 Eileen Way, Suite 101
Syosset, New York 11791
T: 516-921-3838
E: seth@nyfclaw.com
*Counsel for Appellee, Gustavia Home, LLC*

# Special Appendix

# TABLE OF CONTENTS

*(Special Appendix)*

Opinion and Order of Hon. Barbara Moses,
Dated March 31, 2023........................................................................... SPA-1

Judgment of United State District Court Southern
District of New York, Dated March 31, 2023 ........................................... SPA-30

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 03/31/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WINDWARD BORA LLC,

Plaintiff,

-against-

ROYSTON D. BROWNE and CONSTANCE R. BROWNE,

Defendants.

20-CV-4748 (BCM)

**OPINION AND ORDER**

Plaintiff Windward Bora LLC (Windward), a debt buyer, brought this diversity action in 2020 against two borrowers, defendants Royston D. and Constance R. Browne (the Brownes), to recover on a junior note signed by the Brownes in 2005 and originally secured by a junior mortgage on real property in the Bronx. Now before the Court are the parties' cross-motions for summary judgment. (Dkts. 69, 96.)

The Brownes stopped making payments on the junior note in 2008. Eight years later, Windward's predecessor-in-interest, Gustavia Home LLC (Gustavia), made multiple efforts to pursue its equitable remedies against them. In 2016, Gustavia attempted (unsuccessfully) to prevent the senior mortgagee from foreclosing on the mortgaged property in state court. It then brought its own foreclosure action on the junior mortgage, in this District, and in 2018 it obtained a federal foreclosure judgment against the Brownes. In 2019, the property was sold at auction. Later that year, Gustavia sold the junior note to Windward for $100.

Because Windward's predecessor-in-interest prevailed against the Brownes in an action in equity, and because Windward failed to seek leave of court before it filed a new action for damages on the same debt, as required by New York law, the Brownes' motion for summary judgment will be granted, and this action will be dismissed. Even if the Brownes were not entitled to summary judgment in their favor, unresolved factual issues would preclude the award of a money judgment in Windward's favor.

# I. BACKGROUND

## A. Factual Background

The facts summarized below, which unless otherwise noted are undisputed, are taken from:

(i) plaintiff's Statement of Material Facts, filed pursuant to Local Civil Rule 56.1 in support of plaintiff's summary judgment motion (Pl. 56.1 St.) (Dkt. 75), and its underlying evidentiary materials, including the declaration of Seth D. Weinberg, Esq. (Weinberg Decl.) (Dkt. 70) and its separately-filed exhibits (Weinberg Decl. Exs.) (Dkt. 71), the affidavit of Yonel Devico (Devico Aff.) (Dkt. 73) and its attached exhibits, and the Affirmation of Mailing Procedures for Default Notices of Alan Weinreb (Mailing Aff.) (Dkt. 74) and its attached exhibits;

(ii) defendants' Rule 51.6 Counter-Statement, filed in opposition to plaintiff's motion (Def. 56.1 Counter-St.) (Dkt. 81);

(iii) defendants' Affidavit in Opposition to plaintiff's motion, signed jointly by both defendants (Dkt. 79), and its attached exhibits;

(iv) defendants' Statement of Material Facts, filed pursuant to Local Civil Rule 56.1 in support of their own summary judgment motion (Def. 56.1 St.) (Dkt. 100), and its underlying evidentiary materials, including the affirmation of Joseph A. Altman, Esq. (Altman Aff.) (Dkt. 98), and its separately-filed exhibits (Altman Aff. Exs.) (Dkt. 94-1);[1]

---

[1] Both plaintiff and defendants had difficulty filing their motion papers in conformity with this District's Electronic Case Filing Rules & Instructions (ECF Rules), and in some instances were required to refile their papers multiple time, resulting in non-consecutive and out-of-sequence docket numbers. For example, defendants initially filed all of their moving papers on May 24, 2022, as a single docket entry with multiple sub-parts. (Dkt. 68.) They refiled those papers on August 26, 2022 (Dkt. 94), to correct their "filing error" (Dkt. 94-2), and again on August 30, 2022. (Dkt. 95.) However, these correction attempts drew deficiency notices from the Clerk of Court, apparently because defendants once again failed to file their supporting documents separately. (Dkts. 94, 95.) Defendants finally succeeded – on September 3, 2022 – in separately refiling their Notice of Motion, the Altman Affirmation, their Memorandum of Law, and their Rule 56.1 Statement. (Dkts. 96, 98, 99, 100.) For unknown reasons, however, they never refiled a complete

(v) plaintiff's Rule 56.1 Counter-Statement, filed in opposition to defendants' motion (Pl. 56.1 Counter-St.) (Dkt. 82);

(vi) the declaration of Seth D. Weinberg, Esq., filed in opposition to defendants' motion (Weinberg Opp. Decl.) (Dkt. 83), and its attached exhibits;

(vii) the affirmation of Rafi Hasbani, Esq., filed in opposition to defendants' motion (Hasbani Aff.) (Dkt. 85); and

(viii) the reply affirmation of Joseph A. Altman, Esq., filed in further support of defendants' motion (Dkt. 89), and its attached exhibits.

In accordance with *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991), the Court has also taken judicial notice of the pleadings and other papers filed in *Gustavia Home, LLC v. Brown, et al.*, No. 16-CV-9318 (JMF) (S.D.N.Y.) (the Federal Foreclosure Action), in which Gustavia obtained a Judgment of Foreclosure and Sale against the Brownes (the Federal Foreclosure Judgment) (Dkt. 81 in 16-CV-9318) on July 16, 2018.[2]

**1. The Parties**

Plaintiff Windward is a Delaware limited liability company. Pl. 56.1 St. ¶ 1. Yonel Devico, who is its sole member, was, at the time this action was filed, a citizen of Morocco and a legal permanent resident of the United States. *Id.*; *see also Windward Bora, LLC v. Barrie*, 2022 WL 4485149, at *2 (E.D.N.Y. Sept. 27, 2022) (determining that Devico was a Moroccan citizen until July 20, 2022, when he was naturalized as a U.S. citizen).[3]

---

set of Exhibits A through W, which were supposed to be annexed to the Altman Affirmation. (Dkt. 98.) A complete set of those exhibits remains available at Dkt. 94-1.

[2] Some but not all of the relevant filings in the Federal Foreclosure Action have been submitted to this Court as attachments to the parties' summary judgment papers. For the sake of consistency, however, this Opinion and Order identifies all such filings as "Dkt. __ in 16-CV-9318."

[3] Plaintiff asserts that Devico was domiciled in Florida when this action was filed. Pl. 56.1 St. ¶ 1. Defendants "dispute this statement," Def. 56.1 Counter-St. ¶ 1, pointing to documents suggesting

The Brownes are citizens of New York, residing in Hartsdale, New York. Pl. 56.1 St. ¶ 2; Amended Answer (Am. Ans.) (Dkt. 28) ¶ 3. In 2005, they purchased a building at 1723 Taylor Avenue, in Bronx County, New York (the Subject Property), as an investment property. Weinberg Decl. Ex. D (R. Browne Dep. Tr.) at 11:16-12:12; Weinberg Decl. Ex. E (C. Browne Dep. Tr.) at 13:1-6.

#### 2. The Junior Note

On July 21, 2005, the Brownes obtained a loan in the principal amount of $536,000 from First Estate Funding Corp (FEFC), evidenced by a note executed in favor of FEFC (the Senior Note), and secured by a mortgage on the Subject Property (the Senior Mortgage). *See* Declaration of Joyce A. Davis, Esq. (Davis Decl.) (Dkt. 50 in 16-CV-9318) Ex. C, at ECF p. 4. The Senior Mortgage was recorded in the Office of the City Register of the City of New York, Bronx County (City Register). *Id.* at ECF p. 2.

On the same day, the Brownes obtained a second loan in the principal amount of $100,500 from FEFC, evidenced by a note (the Junior Note) in favor of FEFC. Pl. 56.1 St. ¶ 3; Def. 56.1 Counter-St. ¶ 3 ("undisputed"); *see also* Devico Aff. Ex. A (Junior Note). The Junior Note was secured by a junior mortgage (the Junior Mortgage) on the Subject Property. *See* Davis Decl. Ex. D, at ECF pp. 4-12 (Junior Mortgage). The Junior Mortgage was recorded with the City Register on September 6, 2005. *See id.* at ECF p. 2. The Junior Note required the Brownes to make monthly

---

that Devico lived in New York City in 2018 and owned a condominium in Levittown, New York in 2020. *See* Altman Aff. Exs. T (Dkt. 94-1 at ECF pp. 226-28), U (Dkt. 94-1 at ECF pp. 230-39). Neither of these documents raises a genuine dispute of fact as to Devico's domicile on June 19, 2020. In any event, Devico's domicile is irrelevant to this Court's diversity jurisdiction (and hence immaterial to any issue now before this Court), because "LLCs take on the *citizenship*, rather than domicile, of their members." *Windward Bora v. Barrie*, 2022 WL 4485149, at *3 (emphasis in original) (holding that for diversity purposes Windward Bora was a citizen of Morocco until July 20, 2022, regardless of where Devico was domiciled). *See* Part II.B, *infra*.

payments of $772.76 starting on September 1, 2005, until August 1, 2035. Junior Note § 3(A)-(B). The terms of the Junior Note are governed by the Junior Mortgage. *See* Junior Note § 10. The Junior Mortgage, in turn, is governed by "the state and local law that applies in the place that the [Subject] Property is located," that is, New York. Junior Mortgage at ECF p. 8.

The Senior Mortgage and Senior Note passed hands many times.[4] So did the Junior Mortgage and Junior Note. On July 21, 2005 (the day the documents were signed), FEFC assigned them to Lehman Brothers. Davis Decl. ¶ 3 & Ex. B, at ECF p. 2. On July 6, 2006, Lehman Brothers assigned them to MERS. *Id.* at ECF p. 4. On July 27, 2016, MERS assigned them to 20 Cap Fund I, LLC (20 Cap Fund). *Id.* at ECF p. 6. On September 16, 2016, 20 Cap Fund transferred the Junior Mortgage and Junior Note to Gustavia. *Id.* at ECF p. 9. Gustavia, like Windward, is a single-member LLC whose sole member is Devico. Def. 56.1 St. ¶ 4; Pl. 56.1 Counter-St. ¶ 4. Each of these transactions was recorded with the City Register. *See* Davis Decl. Ex. B.

Finally, Gustavia sold the Junior Note to Windward for $100, pursuant to a Money Purchase Loan Agreement (the MPL Agreement) dated and effective as of November 1, 2019. Altman Aff. Ex. K (Dkt. 94-1 at ECF pp. 155-63) (MPL Agreement).[5] Windward received physical possession of the Junior Note on November 2, 2019. Pl. 56.1 St. ¶ 4. Its counsel took possession of the "original collateral file" containing the Junior Note on July 9, 2021, and was in possession of it when this action was commenced. Devico Aff. ¶ 9.[6]

[4] FEFC assigned the Senior Mortgage and Senior Note to Lehman Brothers Bank, FSB (Lehman Brothers), which assigned them to Mortgage Electronic Registration Systems, Inc. (MERS), which assigned them to Aurora Loan Services, LLC (Aurora), which assigned them to Nationstar Mortgage LLC (Nationstar). *See* Davis Decl. ¶ 2 & Ex. A.

[5] As discussed Part I.A.4, *infra*, the Junior Mortgage had by this point been foreclosed.

[6] Defendants "dispute this statement," Def. 56.1 Counter-St. ¶ 4, on the ground that the Junior Note was endorsed to Gustavia (and not further endorsed by Gustavia to Windward), and that the assignment from Lehman Brothers to MERS was "robo-signed" on behalf of Lehman Brothers. *Id.*

### 3. The Brownes' Default

It is not clear exactly when the Brownes stopped making payments on the Junior Note. The evidence, however, points to 2008. Plaintiff relies on a "Pay History" showing that defendants made their last payment on August 1, 2008, defaulted on their payment due September 1, 2008, and likewise defaulted on each payment thereafter. Devico Aff. ¶ 7 & Ex. B (Pay History). If the Pay History is accurate, the remaining principal balance on the Junior Note as of the first missed payment was $98,031.31. Devico Aff. Ex. B. However, Windward did not create the Pay History, and neither Devico nor Windward's corporate designee, Eitan Korb, was able to say who created it or whether it was accurate. *See* Altman Aff. Ex. D (Dkt. 94-1 at ECF pp. 19-44) (Devico Dep. Tr.) at 52:18-54:25; Altman Aff. Ex. E (Dkt. 94-1 at ECF pp. 73-85) (Korb Dep. Tr.) at 74:6-75:22.

Mr. Browne testified that defendants defaulted on both mortgages in "the early part of 2008." R. Browne Dep. Tr. at 19:6-10. Ms. Browne could not recall "when we stopped paying." C. Browne Dep. Tr. at 49:7-8.

### 4. The State and Federal Foreclosure Actions

On June 5, 2009, Aurora, which at that time held the Senior Mortgage and the Senior Note, brought an action to foreclose on the Subject Property in New York State Supreme Court, Bronx County, entitled *Aurora Loan Services, LLC v. Browne, et al.*, No. 381143/2009 (N.Y. Sup. Bronx Cty.) (the State Foreclosure Action). Def. 56.1 St. ¶ 11; Altman Aff. Ex. F (summons and complaint in State Foreclosure Action). The defendants in the State Foreclosure Action were the Brownes; plaintiff's predecessor MERS (which at that time held the Junior Mortgage and the Junior

Neither of these points creates a material dispute of fact as to Windward's receipt and physical possession of the Junior Note.

Note); and various other defendants with "some interest in or lien upon" the Subject Property. Altman Aff. Ex. F, at ECF p. 90. All of the defendants in the State Foreclosure Action (including MERS) failed to answer, and an Order of Reference was entered. *See* Davis Decl. ¶ 9 & Ex. H.

Six years later, on November 17, 2016, Gustavia (which by then had acquired the Junior Mortgage and Junior Note) moved to vacate the Order of Reference. Davis Decl. Ex. H; *see also* Weinberg Opp. Decl. Ex. I, at ECF p. 28. On December 2, 2016 (while its motion to vacate was pending in the State Foreclosure Action), Gustavia filed the Federal Foreclosure Action, initially seeking both a money judgment on the Junior Note and a judgment of foreclosure on the Junior Mortgage. *See* Gustavia Compl. (Dkt. 1 in 16-CV-9318) ¶¶ 1, 27-48; Gustavia Am. Compl. (Dkt. 19 in 16-CV-9318) ¶¶ 1, 27-48.[7] The defendants in the Federal Foreclosure action were the Brownes; Nationstar (which by then had acquired the Senior Mortgage and Senior Note); and various other defendants "having or claiming an interest in or lien upon" the Subject Property. Gustavia Am. Compl. at ECF p. 1.

Gustavia alleged that the Brownes defaulted "by failing to make the monthly installment due on October 11, 2010 and have remained in default to [the] present date." Gustavia Am. Compl. ¶ 18.[8] Gustavia attached, among other things, a copy of the Junior Note, including an allonge endorsed by 20 Cap Fund in blank, *see* Gustavia Am. Compl. Ex. A,[9] and a Notice of Attempt to

[7] In the Federal Foreclosure Action, Gustavia alleged that it was a "duly organized corporation domiciled in Florida," identifying Jared Dotoli as its sole member. Gustavia Am. Compl. ¶ 2. In the instant action, plaintiff admits that Gustavia is an LLC, not a corporation, and that its sole member is Devico. Pl. Counter 56.1 St. ¶ 4. Plaintiff does not explain this discrepancy.

[8] This appears to be a fictitious date, selected because it was within the applicable six-year statute of limitations for on a note secured by a mortgage, set out in N.Y. C.P.L.R. (CPLR) § 213(4).

[9] The allonge read: "PAY TO THE ORDER OF [blank space] WITHOUT RECOURSE," and was signed by Corey O'Brien, identified as a Managing Member of 20 Cap Fund and an "Authorized Signer." Gustavia Am. Compl. Ex. A, at ECF p. 4.

Collect Debt, dated June 14, 2016. *See id.* Ex. D (Gustavia Default Notice). The Gustavia Default Notice notified the Brownes that they were in default under the Junior Mortgage and Junior Note as of October 11, 2010, and that the "unpaid principal balance" was $98,013.31 (that is, the amount unpaid as of September 1, 2008, according to the Pay History), "plus accrued but unpaid interest, late charges, advances and costs." Gustavia Default Notice at ECF pp. 2-3.

On January 26, 2017, the Supreme Court, Bronx County, denied Gustavia's motion to vacate the Order of Reference, because Gustavia was not a party to the State Foreclosure Action and had not moved to intervene. Davis Decl. Ex. H.

On February 14, 2017, Nationstar appeared and answered in the Federal Foreclosure Action. (Dkt. 26 in 16-CV-9318.) It was the only defendant to do so.

On May 2, 2017, the Supreme Court, Bronx County, issued a judgment of foreclosure and sale (the State Foreclosure Judgment) against the Brownes, MERS, and others. *See* Altman Aff. Ex. G; Davis Decl. Ex. I (State Foreclosure Judgment). The State Foreclosure Judgment found that the senior mortgagee was due $831,366.84 on the Senior Note as of September 14, 2015, plus daily interest thereafter, and ordered that the referee sell the Subject Premises at public auction to satisfy that debt. State Foreclosure Judgment at 2-4. If there were any surplus monies, the referee was to deposit them with the Bronx County Clerk, "to the credit of this action," to be withdrawn only on further order of the court. *Id.* at 5-6. The referee was also to file a "report of such sale under oath," showing the disposition of the proceeds. *Id.* at 6.

The State Foreclosure Judgment extinguished the rights of all of the named defendants (including MERS), and their successors, in and to the Subject Premises:

> ORDERED, ADJUDGED AND DECREED that each and all of the Defendant(s) in this action and all persons claiming under them, or any or either of them, after the filing of [Nationstar's] notice of pendency of this action, be and they are hereby

> forever barred and foreclosed of all right, claim, lien, title, interest, and equity of redemption in said mortgaged premises and each and every part thereof[.]

*Id.* at 6. Thus, it is undisputed that the Junior Mortgage "was foreclosed as a result of the judgment of foreclosure and sale and the subsequent sale in the 2009 action." Pl. 56.1 Counter-St. ¶ 14.

Thereafter, Gustavia moved to intervene in the State Foreclosure Action – and enjoin any actual foreclosure sale – arguing that it was the holder of "a superior, not subordinate, mortgage," and should have an opportunity to litigate that claim on the merits. Weinberg Decl. Ex. I, at ECF p. 17.[10] On February 9, 2018, the Supreme Court, Bronx County, denied that motion as untimely. Davis Decl. Ex. L, at 4.

On March 19, 2018, Nationstar filed a motion in the Federal Foreclosure Action to dismiss the Gustavia Amended Complaint for lack of subject matter jurisdiction, invoking the *Rooker-Feldman* doctrine, and as barred by the doctrines of *res judicata* and collateral estoppel. (*See* Dkt. 49 in 16-CV-9318.) Gustavia never responded to Nationstar's motion. Instead, on April 4, 2018, Gustavia and Nationstar entered into a Stipulation of Discontinuance, dismissing Gustavia's claims against Nationstar with prejudice. (Dkt. 53 in 16-CV-9318.) Thereafter, noting that Gustavia and Nationstar "settled," the Hon. Robert W. Lehrburger denied Nationstar's motion to dismiss as moot. (Dkt. 55 in 16-CV-9318). The record now before this Court does not disclose the terms of that settlement.

On May 9, 2018, Gustavia moved for a default judgment against all remaining defendants in the Federal Foreclosure Action, including the Brownes. (Dkt. 66 in 16-CV-9318.) In its affidavit

[10] In support of its motion to intervene, Gustavia submitted an affidavit dated May 22, 2017, signed by Dotoli as "managing member" of Gustavia, and attaching a copy of the Junior Note. *See* Altman Aff. Ex. J (Dkt. 94-1 at ECF pp. 147-53). On this copy of the Junior Note, the 20 Cap Fund allonge is no longer endorsed in blank – it has been filled in, by hand, to read, "PAY TO THE ORDER OF GUSTAVIA HOME LLC WITHOUT RECOURSE." *Id.* at ECF p. 153.

of damages, filed on May 9, 2018 and signed by Dotoli, Gustavia again asserted that the loan was "due for payment" on October 11, 2010; that the outstanding principal balance was $98,031.31; and that Gustavia was also entitled to $63,672.87 in past due interest (as of May 1, 2018), Dotoli Aff. (Dkt. 67-3 in 16-CV-9318) ¶¶ 5-7, for a total of $161,704.18 as of that date.

On May 30, 2018, the Clerk of Court entered the defaults. (Dkts. 74-78 in 16-CV-9318.) After a show-cause hearing on May 31, 2018, at which none of the defaulted defendants appeared, the Hon. Jesse M. Furman (to whom the case had been reassigned) entered the Federal Foreclosure Judgment on July 16, 2018, in favor of Gustavia and against, *inter alia*, the Brownes.

The Federal Foreclosure Judgment found that the amount due on the Junior Note was $161,704.18 as of May 1, 2018, "as set forth in the Dotoli Affidavit," plus daily interest thereafter, and ordered that the Subject Premises be sold at public auction to satisfy that debt. Federal Foreclosure Judgment at ECF pp. 2-3. Additionally, Judge Furman appointed a referee to conduct the sale, deposit the proceeds in a bank account designated for that purpose, and then pay:

> 1st The sum of $500.00 to said Referee for [her] fees herein.
>
> 2nd The expenses of the sale and the advertising expenses as shown on the bills presented to said Referee and certified by [her] to be correct, duplicate copies of which shall be left with said depository.
>
> 3rd And also the sum of $161,704.18 (inclusive of costs), the amount computed by the Court and adjudged to Plaintiff as aforesaid, with interest from May 1, 2018 and also the amount of any sums expended by Plaintiff, for taxes, assessments, water rates and sewer rents, with interest and penalties accrued thereon, or so much thereof as the purchase money of the mortgaged premises will pay of the same[.]

*Id.* at ECF p. 4. Thereafter, the referee was to "take the receipt of Plaintiff or its attorney" for the sums due and "file it with [her] report of sale." *Id.* If the sale proceeds were "insufficient to pay the amount adjudged due to Plaintiff," the referee was to specify the amount of the deficiency, and plaintiff could "recover from Defendants the whole deficiency [or] so much thereof as the Court may determine to be just and equitable," provided that a motion for a deficiency judgment was

made in accordance with § 1371 of the New York Real Property Actions and Proceedings Law (RPAPL). *Id.* at ECF p. 5-6. No report of sale was ever filed, and no motion for a deficiency judgment was ever made under RPAPL § 1371.

On January 29, 2019, the Subject Property was sold at public auction by the referee appointed in the State Foreclosure Action, for $1,293,832.88. Weinberg Opp. Decl. Ex. L (Referee's Deed). The purchaser was the Federal National Mortgage Association. *Id.*

No party has submitted the referee's report of sale. Consequently, the record before this Court does not reflect whether any surplus monies were deposited as a result of the auction, or whether Windward (or its predecessor) recovered any such funds in a surplus-money proceeding within the State Foreclosure Action.[11]

**5. The Windward Default Notice**

On January 22, 2020, plaintiff's counsel mailed a demand letter (the Windward Default Notice) to the Subject Property and to the Brownes' last known address. Pl. 56.1 St. ¶ 7; Mailing Aff. ¶ 11 & Ex. A (Windward Default Notice). The letter notified the Brownes that the "[r]emaining principal balance as of January 22, 2020" was $98,031.31 (again, the amount unpaid as of September 1, 2008, according to the Pay History, *see* Devico Aff. Ex. B); that the accrued interest was $49,671.92, which was also the amount in "arrears"; and that failure to pay the arrears

[11] "Under New York law, the lien of a junior mortgagee who is made a party to a foreclosure action brought by a senior mortgagee, although cut-off and extinguished as to the land, continues as a lien upon the surplus funds arising from the foreclosure." *Dime Sav. Bank of New York v. Boklan*, 1989 WL 35946, at *3 (E.D.N.Y. Apr. 3, 1989). Thus, in the event of surplus funds, the junior mortgagee may "look to the surplus monies," *id.*, without commencing a separate action. *Id.* at *4; *see also NYCTL 1997-1 Tr. v. Stell*, 184 A.D.3d 9, 13, 124 N.Y.S.3d 41, 44 (2d Dep't 2020) (agreeing that junior mortgagee's lien, although "terminated upon foreclosure" by a senior lienholder, "attached to the surplus upon the foreclosure sale," such that junior mortgagee was not required to "commence a separate action within the six-year statute of limitations").

by February 21, 2020, "may result in a lawsuit being commenced against" them. Windward Default Notice at ECF pp. 3-4.

Defendants did not cure the default. Pl. 56.1 St. ¶ 8.[12]

**B. Procedural History**

Plaintiff filed this action on June 19, 2020, asserting a single claim, sounding in breach of contract, for recovery under the Junior Note. Compl. ¶¶ 14-21. Plaintiff alleges that the Brownes failed to make their monthly payment due on July 1, 2014, "and the default continues to date." *Id.* ¶ 16.[13] Windward attaches a copy of the Junior Note, but without any version of the allonge endorsed by 20 Cap Fund. *Id.* Ex. A. In its Complaint, Windward computes the amount owed as $148,542.01, consisting of the $98,031.31 outstanding principal balance on the Junior Note (once again, the amount unpaid as of September 1, 2008), plus $50,420.70 in accrued interest from July 1, 2014, through the date of filing. *Id.* ¶ 20.

Defendants filed an Answer on August 24, 2020 (Dkt. 16), and an Amended Answer on November 6, 2020. The Amended Answer denies all of plaintiff's allegations (except that the Brownes reside in Hartsdale, New York, which is admitted), Am. Ans. ¶ 3, and includes thirteen "affirmative defenses," most of which are not affirmative defenses at all. *Id.* ¶¶ 5-24.[14] Defendants

[12] Defendants "dispute this statement," Def. 56.1 Counter-St. ¶ 8, because, in their view, "[t]here was no default to cure," for various purely legal reasons (*e.g.*, "the Statute of Limitations has run," *id.* ¶ 8(d)) having nothing to do with whether the Brownes paid all or any part of the debt after service of the Windward Default Notice. Thus, defendants have not created a genuine dispute of fact as to the Brownes' failure to pay.

[13] Like the default date alleged in the Gustavia Amended Complaint, this appears to be a fictitious date, likely selected because it was within the applicable six-year statute of limitations, set out in CPLR § 213(4). At deposition, Devico testified that in reality the Brownes "have been in default way before this [date]." Devico Dep. Tr. at 38:8-13. When asked why he picked July 1, 2014, Devico replied, "[t]hat date suits me and I would be happy if they paid the interest as of July 1st, 2014." *Id.* at 38:22-23.

[14] There are two separate "1st" affirmative defenses, *see* Am. Ans. ¶¶ 5-8, making thirteen in total. "An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments

further aver, under two headings labeled "Affirmative Defense/Counterclaim," that plaintiff's action on the Junior Note is time-barred, *see id.* ¶¶ 22-23,[15] and that plaintiff's Complaint "is based upon a fraudulent claim, with a fraudulent set of papers." *Id.* ¶ 24.[16]

On September 22, 2020, the parties consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c). (Dkt. 22.)

On March 24, 2022, after discovery, the parties filed their cross-motions for summary judgment. (Dkts. 68-69.) In addition to the factual materials described in Part I.A, *supra*, plaintiff filed three briefs: an opening memorandum of law in support of its summary judgment motion (Pl. Mem.) (Dkt. 76); an opposition memorandum in response to defendants' summary judgment motion (Pl. Opp. Mem.) (Dkt. 86); and a reply memorandum in further support of its own motion.

---

that, if true, will defeat the plaintiff's or prosecution's claim, *even if all allegations in the complaint are true*.'" *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary 430 (7th ed. 1999)) (emphasis added). The defendant bears the burden of proof as to a true affirmative defense. *See*, *e.g.*, *BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 91 (E.D.N.Y. 2021) ("Under New York law, the statute of limitations is an affirmative defense, and defendant bears the burden of proving that the plaintiff's claim is untimely."); *Miss Jones LLC v. Stiles*, 2020 WL 4704886, at *8 (S.D.N.Y. Aug. 13, 2020) (where plaintiff "plainly established its *prima facie* entitlement to foreclosure," and where defendant raised the statute of limitations as a defense, defendant "bears the burden of establishing . . . that the limitations period has expired since the plaintiff's claim[ ] accrued") (citation omitted). "Defenses" in name, which merely deny plaintiff's material allegations or otherwise challenge plaintiff's *prima facie* case are not, in reality, affirmative defenses, and do not alter the burden of proof as to the elements of plaintiff's claim. Thus, for example, defendants' assertion that they never signed the Junior Note, and that the instrument attached to the Complaint is a "forgery," *see* Am. Ans. ¶¶ 12, 14, were not affirmative defenses. They were denials of plaintiff's core allegation that the Brownes "executed and delivered" the Junior Note to plaintiff's predecessor FEFC in 2005. *See* Compl. ¶ 11.

[15] This is an affirmative defense, *see*, *e.g.*, *Miss Jones*, 2020 WL 4704886, at *8, but is not a counterclaim.

[16] Defendants abandoned their "fraudulent papers" defense/counterclaim, Am. Ans. ¶ 24, along with the "forgery" allegations upon which it was based, *id.* ¶ 15, after defendants' counsel inspected the original Junior Note, *see* Hasbani Aff. ¶ 19, and commissioned a handwriting analysis by Patricia Zippo, a forensic document examiner, who concluded that the Brownes' signatures on that document were genuine. *See* Weinberg Decl. Ex. F (report of Patricia Zippo), at 4.

(Pl. Reply) (Dkt. 91). Similarly, defendants filed three briefs: an opening memorandum of law in support of their summary judgment motion (Def. Mem.) (Dkt. 99); an opposition memorandum in response to plaintiff's motion (Def. Opp. Mem.) (Dkt. 80); and a reply memorandum in further support of their own motion (Def. Reply) (Dkt. 90).

### C. The Parties' Arguments

Plaintiff argues that it is entitled to summary judgment because it has established every element of its *prima facie* case for recovery on the Junior Note: that it possesses a valid note; that it made a proper demand for payment, *i.e.*, the Windward Default Notice, sent on January 20, 2022; and that defendants failed to pay following that demand. *See* Pl. Mem. at 5-6.[17] Plaintiff further asserts that each of defendants' affirmative defenses and counterclaims fails. *Id.* at 6-19.[18]

Defendants argue that they are entitled to summary judgment (or, at a minimum, that plaintiff is not entitled to summary judgment) for five primary reasons: (1) because this Court lacks diversity jurisdiction, *see* Def. Mem. at 14-15; (2) because Windward cannot show that it is the holder of the Junior Note and therefore lacks standing to sue on it, *see id.* at 5-7; (2) because the debt was accelerated in 2009, when the State Foreclosure Action was filed, such that this action – filed more than six years later – is time-barred, *see id.* at 14; Def. Opp. Mem. at 7-8; (4) because this action is, in substance, a collateral attack on the State Foreclosure Judgment, and is therefore

[17] In its summary judgment papers, as in its Complaint, plaintiff continues to assert that defendants defaulted under the Junior Note "by failing to make the monthly payments due on July 1, 2014 and each month thereafter." Pl. 56.1 St. ¶ 5; *see also* Devico Aff. ¶ 7; Pl. Mem. at 2. However, it appears to have modified its calculation of the debt owed. According to Devico, the unpaid balance ("UPB") as of March 31, 2022 was $90,802.98, *see* Devico Aff. Ex. E, which is $7,228.33 *less* than the unpaid balance figure ($98,031.31) used by Gustavia in the Federal Foreclosure Action and by Windward in its Default Notice and its Complaint. Plaintiff does not explain this discrepancy.

[18] In this portion of its brief, plaintiff argues that the affirmative defenses asserted in defendants' *original* answer are invalid. Some of those defenses (for example, lack of personal jurisdiction) were abandoned in the Amended Answer, which plaintiff appears to have overlooked.

barred by *res judicata* and/or by the *Rooker-Feldman* doctrine, *see* Def. Mem. at 9-12; and (5) because plaintiff's predecessor Gustavia obtained a judgment of foreclosure against the Brownes in the Federal Foreclosure Action, such that New York's "election of remedies" doctrine bars a second action for damages at law. *Id.* at 7-9; Def. Opp. Mem. at 2, 6.[19]

## II. ANALYSIS

As discussed in more detail below, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because, at the time this action was commenced, Devico – and hence Windward – was a citizen of Morocco, while the Brownes were citizens of New York. *See Windward Bora v. Barrie*, 2022 WL 4485149, at *2. Further, Windward's physical possession of the note when it commenced this action, coupled with the clear terms of the MPL Agreement under which Gustavia assigned it to Windward, demonstrate that Windward is the holder of the Junior Note and has standing to sue on the debt. "No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it." *Suraleb, Inc. v. Int'l Trade Club, Inc.*, 13 A.D.3d 612, 612, 788 N.Y.S.2d 403, 404 (2d Dep't 2004) (quoting *Tawil v. Finkelstein Bruckman Wohl Most & Rothman*, 223 A.D.2d 52, 646 N.Y.S.2d 691, 692 (1st Dep't 1996)).

Nor is this action time-barred. Although the Brownes defaulted in 2008, "[a] default on a single installment payment," or, for that matter, on multiple installment payments, "does not trigger

---

[19] Defendants also argue that Windward "failed to serve a RPAPL § 1304 notice." Def. Opp. Mem. at 10. The argument borders on frivolous. RPAPL § 1304 requires that a mortgagee send a "90-day notice" to a homeowner, before commencing a foreclosure action, which warns the homeowner that he or she is "at risk of losing [their] home." However, the statute does not apply where, as here, the loan was not a "home loan," *see U.S. Bank Nat'l Ass'n v. Shereshevsky*, 198 A.D.3d 1000, 1001, 155 N.Y.S.3d 588, 589 (2d Dep't 2021) (§ 1304 did not apply where borrowers did not "use[] the property as their principal dwelling"). Moreover, this is not a foreclosure action. *See M&T Bank v. Benjamin*, 145 A.D.3d 1519, 1520, 44 N.Y.S.3d 301, 302 (4th Dep't 2016) (§ 1304 did not apply where the action "is not [one] for foreclosure of a mortgage").

the running of the statute of limitations on the entire debt." *Cannell v. Grail Partners, LLC*, 180 A.D.3d 457, 458, 118 N.Y.S.3d 593, 596 (1st Dep't 2020). The limitations period for the balance of the debt commenced to run only when Gustavia accelerated the debt in 2016. *See In re Bennett Funding Grp., Inc.*, 2003 WL 174328, at *10 (Bankr. N.D.N.Y. Jan. 28, 2003) (suit filed "six years less one day" after debt was accelerated was timely), *adopted*, 292 B.R. 476 (N.D.N.Y. 2003).

It is well-settled under New York law that a prior foreclosure proceeding on a mortgage "does not have res judicata effect so as to bar [an] action to recover on the note." *CitiMortgage, Inc. v. Ramirez*, 192 A.D.3d 70, 74-75, 136 N.Y.S.3d 572, 575 (3d Dep't 2020). And since the State Foreclosure Judgment, which decided a claim brought to foreclose on the Senior Mortgage, did not bar Windward's current claim, which is brought on the Junior Note, this action cannot fairly be characterized as inviting this Court to "review and reject[]" that Judgment. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). Thus, *Rooker-Feldman* does not apply.

Defendants are correct, however, that this action is barred by New York's election of remedies doctrine, which disfavors a "multiplicity of lawsuits" to collect on the same debt, *Sanders v. Palmer*, 68 N.Y.2d 180, 185, 507 N.Y.S.2d 844, 846 (1986), and erects several barriers to that practice. Initially, the holder of a note and mortgage must choose between proceeding in equity, by suing on the mortgage, or at law, by suing on the note. *Gizzi v. Hall*, 309 A.D.2d 1140, 1141, 767 N.Y.S.2d 469, 471 (3d Dep't 2003) (mortgagee "must only elect one of these alternate remedies"). If the mortgagee elects to sues in equity and obtains a final judgment of foreclosure – as plaintiff's predecessor did in this District – "no other action shall be commenced or maintained to recover any part of the mortgage debt . . . without leave of the court in which the former action was brought." RPAPL § 1301(3). "The procurement of such leave shall be a condition precedent to the commencement of such other action and the failure to procure such leave shall be a defense

to such other action." *Id.* Moreover, "permission to institute a separate action on the debt will not be granted unless special circumstances were shown which manifestly required that course." *Rainbow Venture Assocs., L.P. v. Parc Vendome Assocs., Ltd.*, 221 A.D.2d 164, 633 N.Y.S.2d 478, 479 (1st Dep't 1995) (cleaned up).

Plaintiff commenced this action without first procuring leave as required under RPAPL § 1301(3).[20] Moreover, while New York law permits courts to consider a complaint filed in the second action as an application for leave *nunc pro tunc*, in this case I conclude that Windward has not shown any "special circumstances . . . which manifestly require[]" that such leave be granted. *Sanders*, 68 N.Y.2d at 185, 507 N.Y.S.2d at 847. *See Dyck-O'Neal, Inc. v. Thomson*, 56 A.D.3d 1262, 1264, 868 N.Y.S.2d 838, 839-40 (4th Dep't 2008) (affirming dismissal of suit at law pursuant to RPAPL § 1301(3) where plaintiff "failed to establish the circumstances" of the prior sale of the mortgaged property and failed to "provide an explanation for its failure to proceed with the judgment of foreclosure that had been obtained by its predecessor"). Consequently, summary judgment will be granted to defendants, and this action will be dismissed.

### A. Legal Standards

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128-29 (2d Cir. 1996). The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that

[20] In fact, Windward's Complaint did not even mention the Federal Foreclosure Action. That was a violation of RPAPL § 1301(2), which "requires in an action on the mortgage debt that the complaint state if any other action has been commenced to recover on said debt." *Citibank, N.A. v. Covenant Ins. Co.*, 150 Misc. 2d 129, 130, 567 N.Y.S.2d 983, 984 (Sup. Ct. Rockland Cty. 1991).

demonstrate the absence of a genuine dispute as to any material fact. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). In evaluating the record, the court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).

If the moving party meets its initial burden, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Celotex*, 477 U.S. at 322; *Beard v. Banks*, 548 U.S. 521, 529 (2006). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To defeat summary judgment, he must present specific, admissible evidence in support of his contention that there is a genuine dispute as to the material facts. *Celotex*, 477 U.S. at 324; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005). Moreover, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Similarly, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

In this District, the moving party must submit a "short and concise statement, in numbered paragraphs," of the material facts that it contends to be undisputed, with citations to the underlying evidence. Local Civ. R. 56.1(a). The non-moving party must then respond in kind, with numbered paragraphs that correspond "to each numbered paragraph in the statement of the moving party." Local Civ. R. 56.1(b). To the extent not "specifically controverted" by the non-moving party, the

statement of material facts submitted by the moving party will be "deemed to be admitted for purposes of the motion." Local Civ. R. 56.1(c). Likewise, if the non-moving party attempts to controvert a fact but fails to present any admissible evidence supporting that party's assertion, the "mere assertion" of a dispute is "insufficient to create a genuine factual dispute for resolution at trial[.]" *Wheeler v. Kolek*, 2020 WL 6726947, at *6 (S.D.N.Y. Nov. 16, 2020).

**B. This Court Has Subject Matter Jurisdiction**

Windward invokes this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. Compl. ¶ 9. "[T]hat statute grants jurisdiction over any civil action where the amount-in-controversy exceeds $75,000 and the action involves 'citizens of a State,' on the one hand, and 'citizens or subjects of a foreign state,' on the other." *Windward Bora v. Barrie*, 2022 WL 4485149, at *1 (quoting 28 U.S.C. § 1332(a)(2)). "[T]he existence of diversity jurisdiction depends on the citizenship of the parties at the time the action is commenced." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998).

"[T]he citizenship of an artificial business entity other than a corporation is determined by reference to the citizenship of its members." *WGH Commc'ns, Inc. v. Penachio Malara LLP*, 2020 WL 4274741, at *1 (S.D.N.Y. July 23, 2020) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 196 (1990)) (citations omitted). Thus, where a party is an LLC, the citizenship of each individual member or partner must be identified. *See Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) (LLCs); *Hoguet Newman Regal & Kenney, LLP v. Lowe*, 2021 WL 4638539, at *1 (S.D.N.Y. Oct. 6, 2021) (LLPs).

Here, it is undisputed that Windward Bora is a single-member LLC and that its sole member, Devico, was a citizen of Morocco and a lawful permanent resident of the United States when this action was commenced. Pl. 56.1 St. ¶ 1; *see also* Def. 56.1 Counter-St. ¶ 1 (disputing Devico's residency, but not his citizenship); *Windward Bora v. Barrie*, 2022 WL 4485149, at *2

(finding that Devico was a citizen of Morocco until "he obtained U.S. citizenship on July 20, 2022"). Because Devico was a "citizen or subject of a foreign state" at the relevant time, so was Windward – regardless of where Devico was domiciled. *See Windward Bora v. Barrie*, 2022 WL 4485149, at *3 ("LLCs take on the *citizenship*, rather than domicile, of their members").

Since the parties were completely diverse when this action was filed, and since Windward values its claim at more than $75,000, *see* Devico Aff. Ex. E, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

### C. Windward Has Established Its *Prima Facie* Case

In an action to enforce a promissory note, the plaintiff must provide proof of the valid note and of the defendant's failure, despite demand, to make payment. *Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS*, 536 F. Supp. 2d 345, 349 (S.D.N.Y. 2008). In addition, to establish its standing to sue on a mortgage debt, the plaintiff must show that "when the action was commenced, it was either the holder or assignee of the underlying note." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (*per curiam*) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 132 A.D.3d 980, 19 N.Y.S.3d 543, 544 (2d Dep't 2015)); *see also OneWest Bank, N.A. v. Guerrero*, 2018 WL 2727891, at *3 (S.D.N.Y. June 6, 2018) (same). Windward has done so.

Defendants' insistence that Windward "is not the holder of the promissory note," Def. Mem. at 5, rests on its contention that the physical note is one endorsement short. *See id.* at 6 ("[I]n order to assign the promissory note to the Plaintiff, Gustavia Home LLC was required to indorse the promissory note (either in blank or with a special indorsement)."). But New York law imposes no such requirement. Assignment of a note need not even be in writing; it "can be effectuated by physical delivery." *Bank of New York v. Silverberg*, 86 A.D.3d 274, 280, 926 N.Y.S.2d 532, 537 (2d Dep't 2011) (citation omitted); *see also Melina*, 827 F.3d at 223 ("New York courts have repeatedly held that proof of physical possession . . . is sufficient on its own to prove a plaintiff's

standing to foreclose on the mortgage associated with the note."). If there is a writing, "[n]o special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it." *Suraleb*, 13 A.D.3d at 612, 788 N.Y.S.2d at 404; *Tawil*, 223 A.D.2d at 55, 646 N.Y.S.2d at 692.

Here, Windward has shown that it had physical possession of the Junior Note before this action was commenced. Pl. 56.1 St. ¶ 4. It has also shown, through the MPL Agreement, that Gustavia assigned the Junior Note to Windward for $100. *See* MPL Ag. ¶ 2.1 ("[Gustavia] shall sell, assign, and convey to [Windward] and [Windward] shall buy and accept from [Gustavia] all of the right, title, and interest that [Gustavia] now has, ever had or may hereinafter acquire in the Loans"). No more is required under New York law. Consequently, defendants have failed to raise a genuine dispute of fact as to Windward's ownership of, or standing to sue on, the Junior Note.

Nor have they raised more than a "metaphysical doubt," *Matsushita*, 475 U.S. at 586, as to their default. It is true, as defendants point out, that Windward cannot show that the Pay History is accurate. Def. Mem. at 13. But both Mr. and Ms. Browne admitted at deposition that they stopped making payments on their debt, and Mr. Browne put that default in "the early part of 2008." R. Browne Dep. Tr. at 19:6-10. Plaintiff has thus established its *prima facie* case.

**D. This Action Is Not Time-Barred**

According to defendants, Windward "fabricated the default date" in order to avoid "the running of the statute of limitations on the [Junior Note], which expired six years after the commencement of the 2009 action." Def. Mem. at 14. Defendants are correct that the default date alleged in the Complaint – July 1, 2014 – bears no relationship to when the Brownes actually defaulted. However, they are mistaken about the expiration of the statute of limitations.

The limitations period for breach of a promissory note secured by a mortgage is six years. CPLR § 213(4); *Cannell*, 180 A.D.3d at 458, 118 N.Y.S.3d at 596-97. With respect to an

instrument payable in installments, "separate causes of action accrue for each installment that is not paid, and the statute of limitations begins to run, on the date each installment becomes due." *Wilmington Tr., Nat'l Ass'n v. Dawson*, 174 A.D.3d 673, 674-75, 104 N.Y.S.3d 174, 176 (2d Dep't 2019). Thus, "[a] default on a single installment payment does not trigger the running of the statute of limitations on the entire debt[.]" *Cannell*, 180 A.D.3d at 458, 118 N.Y.S.3d at 597. Once the debt is accelerated, however, "all sums become immediately due and payable, and the six-year statute of limitations begins to run on the entire mortgage debt." *U.S. Bank Nat. Ass'n v. Wongsonadi*, 55 Misc. 3d 1207(A), 55 N.Y.S.3d 695 (table) (N.Y. Sup. Queens Cty. 2017); *accord CIT Bank, N.A. v Nwanganga,* 328 F. Supp. 3d 189, 201 (S.D.N.Y. 2018).

Where, as here, the mortgagee has the option of accelerating the debt after default, *see* Junior Note § 6(C), "some affirmative action must be taken evidencing the holder's election to take advantage of the accelerating provision." *Miss Jones*, 2020 WL 4704886, at *9 (quoting *21st Mortg. Corp. v. Balliraj*, 177 A.D.3d 687, 688, 111 N.Y.S.3d 347, 349 (2d Dep't 2019)). Gustavia took that "affirmative action," and accelerated the debt, when filed the Federal Foreclosure Action on December 2, 2016. As a result, Windward – which stands in Gustavia's shoes – had six years from that date to pursue whatever remedies remained available to it. It filed this action on June 19, 2020, well before its time to do so expired. *See In re Bennett Funding Grp.*, 2003 WL 174328, at *10 (suit filed "six years less one day" after debt was accelerated was timely).

Acceleration of a debt "does not reset the limitations period for the earlier missed payments." *Cannell*, 180 A.D.3d at 459, 118 N.Y.S.3d at 597. Consequently, many of the Brownes' older missed payments (those prior to June 19, 2014) are now forever beyond the reach of their lender or its assignees. But the statute of limitations does not bar Windward from pursuing unpaid installment payments that were due – or accelerated – on and after June 19, 2014.

### E. This Action is Not Barred by *Res Judicata* or *Rooker-Feldman*

Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999) (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476 (1998)). Ordinarily, "New York adheres to a transactional analysis of *res judicata*, 'barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief.'" *Burka v. New York City Transit Auth.*, 32 F.3d 654, 657 (2d Cir. 1994) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)); *see also Pondview Corp. v. Blatt*, 95 A.D. 3d 980, 980, 943 N.Y.S.2d 754, 755 (mem) (2d Dep't 2014).

Due to New York's election of remedies doctrine, however, a mortgagee must choose between proceeding in equity, on the mortgage, and proceeding at law, on the note. *Gizzi*, 309 A.D.2d at 1141, 767 N.Y.S.2d at 471. Due to this required election of remedies, a mortgagee suing in equity "could not have raised a cause of action to recover on the note" in the same proceeding. *CitiMortgage*, 192 A.D.3d at 73-74, 136 N.Y.S.3d at 575. It is for this reason that the outcome of a suit to foreclose the mortgage is not *res judicata* as to a later suit on the note. *Id.* Consequently *res judicata* does not shield defendants from the present action on the note.

Nor does the *Rooker-Feldman* doctrine.[21] *Rooker-Feldman* bars a federal claim brought by a plaintiff who (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state-court judgment, and (4) commenced the district court proceedings after the state-court judgment was rendered. *Vossbrinck v. Accredited*

[21] *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

*Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014); *Hoblock*, 422 F.3d at 85. In *Vossbrink*, plaintiff (who had his real property foreclosed in a state court action) ran afoul of *Rooker-Feldman* when he "ask[ed] the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently." 773 F.3d at 427. Here, by contrast, Windward does not ask this Court to review or reject the State Foreclosure Judgment; it merely seeks a different remedy (and one equally available in state court) for defendants' default. *Rooker-Feldman* does not bar that request.

**F. This Action Is Barred by RPAPL § 1301(3)**

RPAPL § 1301(3) provides that, while an action to recover a mortgage debt is pending, "or after final judgment for the plaintiff therein," no other action shall be "commenced or maintained to recover any part of the mortgage debt . . . without leave of the court in which the former action was brought." The purpose of the rule "is to avoid multiple suits to recover the same mortgage debt and confine the proceedings to collect the mortgage debt to one court and one action[.]" *Dollar Dry Dock Bank v. Piping Rock Builders, Inc.*, 181 A.D.2d 709, 710, 581 N.Y.S.2d 361, 362-63 (2d Dep't 1992). Obtaining leave of the court is a "condition precedent" to the commencement of the "other action," that is, the new action, and "the failure to procure such leave shall be a defense to such other action." RPAPL § 1301(3).[22]

[22] The New York courts treat RPAPL § 1301(3) as an affirmative defense, which must be raised and established by the defendant. *See, e.g.*, *N.Y. Comm'l Bank v. J. Realty F. Rockaway, Ltd.*, 108 A.D.3d 757, 757, 969 N.Y.S.2d 796, 797 (2d Dep't 2013). In this case, defendants did not plead their RPAPL § 1301(3) defense in their Amended Answer. However, "failure to plead an affirmative defense does not necessarily result in waiver." *Rose v. AmSouth Bank of Fla.*, 391 F.3d 63, 65 (2d Cir. 2004). Where, as here, the defense is briefed extensively at the summary judgment stage – by both sides – and the plaintiff voices no objection to defendants' failure to raise the issue "formally in the pleadings," the district court may deem such objections waived and entertain the defense. *Id.*; *see also Sidman v. Concord Arena Parking, LLC*, 2023 WL 2552831, at *6 n.7 (E.D.N.Y. Mar. 17, 2023) ("In the absence of any convincing argument or evidence of undue

Where, as here, a plaintiff commences a second action without obtaining leave of the court, in violation of § 1301(3), that court may, as an exercise of discretion, "grant the leave *nunc pro tunc*," thereby permitting the second suit to proceed. *Stein v. Blatte*, 118 Misc. 2d 633, 636, 461 N.Y.S.2d 189, 191 (Sup. Ct. Nassau Cty. 1983). In exercising that discretion, however – particularly where a party seeks to bring an action on the note after obtaining a final judgment of foreclosure in the prior action – courts require a showing that "special circumstances" "manifestly required that course." *Rainbow Venture Assocs.*, 221 A.D.2d at 164, 633 N.Y.S.2d at 479; *see also Resol. Tr. Corp. v. J.I. Sopher & Co.*, 108 F.3d 329, 1997 WL 100879, at *2 (2d Cir. 1997) (Table) ("New York courts have interpreted section 1301(3) to allow a separate cause of action in 'special' circumstances"). "In general, 'the question as to whether special circumstances have been shown is regulated by consideration of equitable principles on a case by case basis.'" *Resol. Tr. Corp.*, 1997 WL 100879, at *2 (quoting *Stein v. Nellen Dev. Corp.*, 123 Misc.2d 268, 271, 473 N.Y.S.2d 331, 332-33 (Sup. Ct. Suffolk Cty. 1984)).

This Court concludes that there are no special circumstances here that manifestly require that course. First, Windward has not even requested leave under § 1301(3). Rather, it takes the position that no such leave was required, because "equitable concerns militate against the mechanical application of RPAPL § 1301 in this case." Pl. Opp. Mem. at 9. This appears to be a misreading of New York law. *See, e.g.*, *Dyck-O'Neal*, 56 A.D.3d at 1264, 868 N.Y.S.2d at 839 (defendants' submission of "the pleadings from the prior foreclosure action," as well as the resulting "judgment of foreclosure and sale," was adequate to "establish[] that plaintiff was required to obtain leave of the court to commence this action," which was on the note); *F.D.I.C. v.*

prejudice, delay, or bad faith, I consider it entirely appropriate to consider these [unpled] defenses" on summary judgment). I have done so here.

*1873 W. Ave. Corp.*, 225 A.D.2d 893, 895, 639 N.Y.S.2d 163, 165 (3d Dep't 1996) (where plaintiff FDIC "procured a favorable judgment" in the prior *in rem* proceeding, then discontinued it, such that a "separate action to recover on the debt . . . could not be commenced without leave of court," but where "leave was not requested," the trial court was "technically justified in dismissing the complaint").[23]

Second, the cases upon which plaintiff relies for its equitable calculus are largely inapposite. For example, plaintiff argues that § 1301(3) should not be "mechanically applied," Pl. Opp. Mem. at 9, when a "junior mortgagee's subsequent action seeking a monetary judgment on a note" is brought after "the previously commenced foreclosure action is abandoned because the junior mortgagee's 'status as a junior mortgagee made it improbable that foreclosure would satisfy the underlying debt.'" *Id.* at 11 (quoting *Old Republic Nat. Title Ins. Co. v. Conlin*, 129 A.D.3d 804, 805, 13 N.Y.S.3d 99, 101 (2d Dep't 2015)). But plaintiff (or, more accurately, plaintiff's predecessor, by whose conduct plaintiff is bound) did not "abandon" the Federal Foreclosure Action. To the contrary: *after* the State Foreclosure Judgment was issued by the Bronx County Supreme Court, and *after* that court denied Gustavia's post-judgment motion to intervene, Gustavia came back to this District, settled with Nationstar (presumably so as to clear the way to a default judgment against the Brownes), and then vigorously sought and promptly obtained a final judgment of foreclosure against the Brownes. For this reason as well, dismissal of the present action "is warranted under RPAPL 1301(3)." *Bayview Loan Servicing, LLC v. Starr-Klein*, 193 A.D.3d 807, 808 142 N.Y.S.3d 414, 415 (mem) (2d Dep't 2021) (dismissing second action since

[23] *See also Sec. Nat'l Servicing Corp. v. Liebowitz*, 281 A.D.2d 615, 616, 722 N.Y.S.2d 69, 70 (2d Dep't 2001) ("since the plaintiff did not obtain court approval prior to commencing this action, the complaint must be dismissed"); *Aurora Loan Servs., LLC v. Spearman*, 68 A.D.3d 796, 797, 890 N.Y.S.2d 124, 125 (2d Dep't 2009) ("Since the plaintiff did not obtain leave of the court prior to commencing the 2003 action, the complaint in the 2003 action should have been dismissed").

Case 1:20-cv-04748-BCM Document 101 Filed 03/31/23 Page 27 of 29

plaintiff commenced it "without leave of the court in which the prior action was brought," and there was "no basis in the record to determine that [plaintiff] discontinued or effectively abandoned the prior [foreclosure] action").

Third, it seems likely (given the sale price of $1,293,832.88, *see* Referee's Deed) that surplus funds were recovered when the Subject Property was auctioned. If so, Gustavia would have had a claim to such funds. *See Dime Sav. Bank of New York*, 1989 WL 35946, at *3-5. But plaintiff has not submitted the referee's report of sale, nor has it provided this Court with any other information about the outcome of that proceeding. It may well be, as plaintiff argues, that "where a lienholder's *in rem* interest is destroyed by reason of a foreclosure sale, its only remedy is to commence an action on the note," which would weigh in favor of granting leave, *nunc pro tunc*, to proceed with that action. Pl. Opp. Mem. at 11 (citing *Lehman v. Roseanne Invs. Corp.*, 106 A.D.2d 617, 618, 483 N.Y.S.2d 106, 107 (2d Dep't 1984)). However, in the absence of any evidence concerning the terms of the Nationstar settlement or the results of the auction, the Court cannot simply accept, on faith, that the Federal Foreclosure Judgment is now "void," Pl. Opp. Mem. at 9, or and that there is "no possibility of a double recovery," *Lehman*, 106 A.D.2d at 618, 483 N.Y.S.2d at 108, if this action at law proceeds to a judgment. *See Dyck-O'Neal*, 56 A.D.3d at 1264, 868 N.Y.S.2d at 840 (trial court properly dismissed action at law, under § 1301(3), where the plaintiff "failed to establish the circumstances" of the prior sale of the subject property).

Fourth, it is undisputed that Windward purchased the Junior Note for $100. MPL Ag. at 2. Moreover, it did so *after* both the State Foreclosure Judgment and the Federal Foreclosure Judgment were issued, meaning that it fully understood, at the time of the transaction, the various barriers to recovery arrayed before it. I therefore find that no special circumstances exist that "manifestly required" that Windward bring this action, *Wand v. Saleh*, 218 A.D.2d 647, 648, 630

N.Y.S.2d 367, 368 (2d Dep't 1995), or that this Court give it leave to do so *nunc pro tunc*. Consequently summary judgment will be entered for defendants and this action will be dismissed.

### G. Plaintiff Would Not, In Any Event, Be Entitled to a Money Judgment in Its Favor

Although plaintiff has succeeded in establishing that it possesses a valid Junior Note, as to which it has standing, and that plaintiffs were in default on and after July 1, 2014, the Court could not enter a judgment for a sum certain – even if this action were not barred by RPAPL § 1301(3) – because plaintiff has not demonstrated the amount that it is owed. Devico attests that the amount due and owing as of March 31, 2022, was $166,477.03, Devico Aff. ¶ 12, but the only substantiation for that sum is an unenlightening set of figures attached thereto as Exhibit E, beginning with an unpaid balance of $90,802.98, which is inconsistent with Windward's pleading, *see* Compl. ¶ 20, and unexplained. Moreover, although that figure already includes interest (through March 31, 2022), and $15,000 in legal fees, *see* Devico Aff. Ex. E, Devico states that it does not include unspecified additional "late fees, legal fees, costs and expenses." Devico Aff. ¶ 12. Perhaps most significantly, the Court has no information concerning any sums recovered by Windward or its predecessor as a result of settlement with the senior mortgagee or surplus-money proceedings in the State Foreclosure Action. Consequently, the issue of damages would remain for trial or further motion practice. *See Merrill Lynch Bus. Fin. Servs. Inc. v. Heritage Packaging Corp.*, 2007 WL 2815741, at *6-7 (E.D.N.Y. Sept. 25, 2007) (referring disputed issue of damages to magistrate judge for report and recommendation); *Desco Shoe Corp. v. Naturalizer of Pittsburgh, Inc.*, 1986 WL 11448, at *3 (S.D.N.Y. Oct. 9, 1986) (directing parties to appear for a "a hearing to determine damages").

**III. CONCLUSION**

For the reasons set forth above, plaintiff's motion for summary judgment (Dkt. 69) is DENIED, defendants' cross-motion (Dkt. 96) is GRANTED, and plaintiff's Complaint is DISMISSED. The Clerk of Court is respectfully directed to enter judgment in favor of defendants and close the case.

Dated: New York, New York
March 31, 2023

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

WINDWARD BORA LLC,

Plaintiff,

-against-

20 **CIVIL** 4748 (BCM)

# JUDGMENT

ROYSTON D. BROWNE and CONSTANCE R. BROWNE,

Defendants.

-----------------------------------------------------------X

It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Opinion and Order dated March 31, 2023, plaintiff's motion for summary judgment is DENIED, defendants' cross-motion is GRANTED, and plaintiff's Complaint is DISMISSED; accordingly, the case is closed.

**Dated:** New York, New York

March 31, 2023

**RUBY J. KRAJICK**

**Clerk of Court**

**BY:** K. Mango

**Deputy Clerk**